NEW YORK CENT. & H. R. R. CO. v. HENNEY.

(Circuit Court of Appeals, Second Circuit. June 14, 1913.)

No. 256.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—OZONIZER.

The refusal of requested instructions, in an action for infringement of the Henney patent No. 974,789 for an ozonizer, *held* not error, and a judgment for plaintiff, based on a verdict finding validity and infringement, affirmed.

2. ATTORNEY AND CLIENT (§ 22*)—COUNSEL TESTIFYING AS EXPERT.

For counsel for a party in an infringement suit to testify as an expert and afterward argue the case to the court or jury is a practice which is unseemly and not to be approved.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 30; Dec. Dig. § 22.*]

This cause comes here upon a writ of error to review a judgment of the District Court, Southern District of New York, entered upon a

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

verdict in favor of defendant in error, who was plaintiff below. The action is one at law for the infri-  -ment of United States Letters Patent No. 974,789 for an ozonizer, issued to plaintiff November 8, 1910. Upon a motion for a new trial the District Judge wrote an exhaustive opinion ([D. C.] 200 Fed. 960), which may be referred to as sufficiently setting forth the details of the patented structure.

J. D. Morgan, of New York City, for plaintiff in error.

F. W. Wright, of New York City (Fred Francis Weiss, of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. [1] The plaintiff in error has argued this cause as if it were an appeal in equity, discussing all the aspects of the patent and all the questions which are concerned with the prior art, invention, equivalency, and infringement. This is a mistaken conception of the situation. The cause was tried with a jury whose decision on all issues of fact is not reviewable here. There is no exception to any refusal to direct a verdict in favor of the defendant; no exception to the admission or exclusion of any testimony. All that has been brought here is found in two assignments of error in charging the jury. There are really three assignments, but the second is practically a duplication of the first and need not be separately discussed. The only claim in controversy is the third, which reads as follows:

"The herein described apparatus for the production of ozone, comprising two similarly shaped open-end glass cylinders of different diameters, each cylinder provided with openings in its wall near one end, each cylinder provided with a layer of foil, one of said cylinders being of a less size than the other and occupying an inverted position with relation to the other, the smaller within the larger, means for closing one end of the device, means for admitting air to the other end of the device and an electrode within the inner vessel."

We may first consider the third assignment of error, which is to the court's refusal to charge a request of defendant, as follows:

"If you find plaintiff's patent embodies but one in a series of improvements, all having the same general object and purpose, the claims of his patent must be restricted to the precise form and arrangement of parts described in his specifications."

The trial judge at first declined to charge this. Thereafter, it being again called to his attention as a deliverance of the Supreme Court, he read it to the jury as an addendum to an instruction as to when a change of form would avoid infringement, telling them that it was a correct statement in many cases. He then left it to them to say whether the prior patents in the case at bar had the same general object and purpose that Henney had, and whether they were directed to the same specific thing.

Just before the jury retired defendant noted "exceptions to those charges which (the court) declined to give to the jury." This certainly did not refer to the request quoted above, because the court did finally give it to the jury. To the instruction that they were to look into the

prior patents to see if they did have the same general object and purpose as Henney had, no exception was reserved. It was a matter for the jury to look into. We find no merit, therefore, in the third assignment of error.

The first assignment of error is to a refusal to charge. After the judge had concluded his charge, various requests were made by the defendant; one being that:

"If the jury find that the defendant's device in operation takes air in at one end and discharges it at the other, then defendant does not embody means for closing one end of the device."

This was refused, the court stating that the jury had the evidence, the description of what the device does and how it does it, and exception to the refusal was reserved. Thereafter the court remarked that he thought he could make a device which would infringe both plaintiff's and defendant's. This language is criticised; it seems harmless to us; certainly it was not excepted to and no error can be predicated on it.

As to the refusal of the request. This matter was elaborately discussed in the opinion filed upon denial of the motion for a new trial; it will be necessary for us to add but little to that discussion. The claim contains no statement that air enters at one end and is discharged at the other. It says merely that there is means for closing one end of the device and means for admitting air to the other end. The specification says that one "end is plugged to prevent egress of air," and elsewhere:

"An annular plug 27 closes the space between the two vessels at their top. The blower 5 directs air through the neck of the outer (sic. should read 'inner') vessel, the air passing upwardly and through the holes 21 in the wall of such vessel, then down between the walls of the two vessels and out the holes 18 at the base of the outer vessel. I am thus enabled to keep all surfaces cool by the air blast, thus securing ozone in the improved manner known to the art without danger of puncturing the walls."

There is nothing in the specifications to show that it is a matter of any importance at which end of the device the air enters and at which end it leaves. The function sought to be secured is that the ozonized air shall be discharged, not mixed with nonozonized air, and that the air in motion shall not pass in a direct course through the device but shall be so diverted that its course will be a tortuous one, thereby tending to keep surfaces cool. The course of the air which passes through defendant's device when mounted as described in the testimony is a tortuous one partly through the space between the two vessels partly through the inner vessel. Additional air which enters the inner vessel through the top does not pass through it, being stopped by a diaphram, but is in constant motion being heated, rising and giving place to other cooler air.

There was much controversy in the case as to the "closing of one end" of the device. In the patent this closing of the inner vessel and of the space between the vessels is effected in the same plane; in defendant's device the diaphram which closes the inner vessel is located above the holes in such vessel, while the block, which it is contended closes the space between the two vessels, is located some distance be-

low the diaphram. But this question, whether or not defendant's device was in fact closed at one end, was left to the jury, whose function it was to decide it under careful instructions, to which no exception was taken or error assigned. They were told that "if (they) do not find in defendant's device means for closing one end of the device they must find for the defendant." Their verdict shows that they found defendant's device was closed at one end. This must be taken as conclusive on us; and, the end being closed, a tortuous course functioning as complainant's does, perhaps not so perfectly, is found in defendant's device. This being so, defendant was not entitled to an instruction that admission of air at one end and its discharge at the other would avoid infringement.

[2] The counsel for plaintiff who tried this cause below, who addressed the jury, and who has argued the writ of error before us, himself testified as an expert witness as to the advantages possessed by the device of the patent over the devices of the prior art. Similar instances of such a practice have recently come within our observation. The practice is one which should be discontinued. It is unseemly for a member of the bar voluntarily to place himself in a position where his duty to his client requires him to address court or jury on the question what decree of credibility should be given to his own sworn testimony.

The judgment is affirmed, with costs.